# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**ZACHERY PAUL RUSSELL,**

      **Plaintiff,**

**v.**                                 **Civil Action No.: 6:13-CV-12705**

**CAROLYN W. COLVIN,**
**Acting Commissioner of**
**Social Security,**

      **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATIONS

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Claimant's application for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By standing order, this case was referred to this United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).    Pending before this Court are Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 10), Brief in Support of the Defendant's Decision (ECF No. 13) and Plaintiff's Reply to Defendant's Brief (ECF No. 14).

## Background

Zachery Paul Russell, Claimant, applied for DIB and SSI under Titles II and XVI under the Social Security Act, 42 U.S.C. Sections 401-433, October 12, 2010 (Tr. at 103-104, 133-185).  In both applications, the claimant alleged disability beginning July 20, 2010.  These claims were denied initially and upon reconsideration.  Claimant filed a written request for hearing on March 17, 2011 (Tr. at 59-60).  In his request for a hearing before an Administrative Law Judge

(ALJ), Claimant stated he had no additional evidence to submit.  An administrative hearing was conducted on December 13, 2011 (Tr. at 752-779).  In the Decision dated January 19, 2012, the ALJ determined that Claimant was not entitled to benefits (Tr. at 10-24).  On February 1, 2012, Claimant requested a review by the Appeals Council (Tr. at 8-9).  On April 8, 2013, the Appeals Council received additional evidence from Claimant which was made part of the record (Tr. at 5).  Records from Amelia McPeak, DO, dated March 1, 2012, and a brief from Jan Dils, Esq., were made part of the record as Exhibit 2E and Exhibit 2F (Tr. at 5).

On April 8, 2013, the Appeals Council "found no reason under our rules to review the Administrative Law Judge's decision."  The Appeals Council stated that it considered the reasons for the Claimant's disagreement with the decision of the ALJ and the additional evidence submitted.  The Appeals Council further stated that this information did not provide a basis for changing the ALJ's decision (Tr. at 2-3).  On May 30, 2013, Claimant brought the present action requesting a remand for consideration of new and material evidence (ECF No. 2).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability.  *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. §§ 404.1520, 416.920 (2013).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  *Id.* §§ 404.1520(a), 416.920(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant is not, the second inquiry is

2

whether claimant suffers from a severe impairment.  *Id.* §§ 404.1520(c), 416.920(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  *Id.* §§ 404.1520(d), 416.920(d).  If it does, the claimant is found disabled and awarded benefits.  *Id.*  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  *Id.* §§ 404.1520(e), 416.920(e).  By satisfying inquiry four, the claimant establishes a *prima facie* case of disability.  *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f) (2013).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the Administrative Law Judge (hereinafter ALJ) determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date (Tr. at 15).  Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of obesity, sleep apnea, depression, anxiety and attention deficit hyperactivity disorder.  (*Id.*)  At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listings in Appendix 1 (Tr. at 16). The ALJ then found that Claimant has a residual functional capacity (hereinafter RFC) to perform less than the full range of light work, reduced by nonexertional limitations (Tr. at 17-

18).   As a result, Claimant cannot return to his past relevant work.   Nevertheless, the ALJ concluded that Claimant could perform jobs such as janitor, price marker and sorter (Tr. at 23), which exists in significant numbers in the national economy.   On this basis, benefits were denied. (*Id.*)

## Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.   In *Blalock v. Richardson*, substantial evidence was defined as:

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence.   *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."   *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner must be reversed and remanded to determine if substantial evidence exists to support the ALJ's decision in light of the new and material evidence.

## Claimant's Background

On October 12, 2010, Claimant filed applications for Title II and Title XVI disability insurance benefits and supplemental security income.   After both his initial claim and request for

consideration were denied, Claimant requested a hearing. The ALJ issued an unfavorable decision on January 19, 2012. In her decision, the ALJ followed the federal regulations governing administrative review of Social Security disability claims, proceeding through the above mentioned customary five-step sequential analysis. *See* 20 CFR § 404.1520(a), 416.920(a).

**<u>Analysis</u>**

**<u>Residual Functional Capacity</u>**

Applying the first three steps in the sequential analysis, the ALJ determined that Claimant (1) had not engaged in "substantial gainful activity" since his alleged onset date, (2) had the severe impairments of obesity, sleep apnea, depression, anxiety and attention deficit hyperactivity disorder but, (3) did not have an impairment that meets or medically equals an impairment that the federal regulations define as disabling. As the regulations instruct, the ALJ evaluated Claimant's residual functional capacity (hereinafter RFC) before proceeding to step four. *See* 20 CFR § 404.1520(a)(4), 416.920(a)(4). In doing so, the ALJ reviewed the opinion evidence and found as follows:

> As for the opinion evidence, on November 29, 2010, Jeff Boggess, Ph.D., a reviewing psychologist at the state agency, completed a Psychiatric Review Technique form and opined that the claimant had no severe mental impairment (Part F, pages 20-33). On February 7, 2011, Frank Roman, Ed.D., a reviewing psychologist at the state agency, reviewed the claim and affirmed the opinion of Dr. Boggess (Part F, page 116). The undersigned gives no significant weight to these opinions as the evidence now of record supports that the claimant has severe mental impairments but none that are disabling.
>
> On December 30, 2010, N. Singh, M.D., a reviewing physician at the state agency, completed a Physical Residual Functional Capacity Assessment form and opined that the claimant was limited to medium exertion with no climbing of ladders, ropes or scaffolds, and no crawling. Further, the claimant could only occasionally perform climbing of ramps and stairs, balancing, stooping, kneeling, or crouching (Part F, pages 42-49). On February 15, 2011, James Egnor, M.D., a reviewing physician at the state agency, reviewed the claim and affirmed the

5

opinion of Dr. Singh (Part F, page 117).  The undersigned gives partial weight to these opinions to the extent that they are consistent with the claimant's residual functional capacity.  However, based on the evidence now of record and giving the claimant the full benefit of the doubt, the undersigned finds that he is limited to light exertion.  Further, the undersigned notes that the vocational expert was still able to identify jobs.

On June 23, 2010, William Cartwright, M.D., completed a Physician's Summary at the request of the West Virginia Department of Health and Human Resources and diagnosed sleep apnea and obesity.  Dr. Cartwright opined that the claimant's diagnosis was limited but noted that length of incapacity/disability was unknown and that any employment limitations were unknown.  (Part F, pages 76-115).  The undersigned gives no weight to the opinion of Dr. Cartwright, as he did not specify any particular length of disability or any specific work-related limitations.  Additionally, the undersigned takes notice that this evaluation was performed for purposes of providing the claimant with a medical card to [receive] state provided medical treatment.  The criteria for these benefits differ from the criteria for Social Security Disability benefits.  Furthermore, the conclusion regarding whether a claimant is "disabled" is reserved to the Commissioner of the Social Security Administration, thus little weight can be afforded by other entities conclusion that a claimant is "disabled."

On November 30, 2011, Maureen Hayes, M.Ed., reported treating the claimant weekly since June 16, 2011, to assist him with the attention and organization skills addressing his attention deficits.  Dr. Hayes reported that the claimant was handicapped by depression and attention deficits which had been the cause of past employment failures.  Dr. Hayes opined that the claimant was disabled (Page 388).  The undersigned gives no weight to this opinion, as the finding of disability is an issue reserved for the Commissioner (SSR 96-5p).

On December 1, 2011, Dr. McPeak, the claimant's treating psychiatrist, completed an assessment form and opined that the claimant was extremely limited in the ability to deal with work stresses; understand, remember, and carry out complex job instructions; behave in an emotionally stable manner; and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  Dr. McPeak further rated the claimant as having marked limitations in eight areas of functioning (Part F, page 496-498).  The undersigned gives little significant weight to these limitations, as they are not consistent with the record as a whole.  Particularly, these limitations are inconsistent with Dr. McPeak's own treatment notes, which indicate that the claimant was psychiatrically stable on his medications.  While she is his treating mental health source and entitled to have her opinion considered, when that opinion is unsupported by her own treatment record, the opinion is greatly diminished in persuasiveness. Dr. McPeak's opinion has been considered to the extent that her opinion is supported by her treatment notes.  Her treatment notes

support finding that the claimant retains the ability to perform routine, repetitive tasks with only occasional interaction with co-workers and supervisors, with no public contact, and no production pace (Tr. at 20-22).

Proceeding to step four of the "sequential evaluation" for the adjudication of disability claims, the ALJ concluded that Claimant was unable to perform any past relevant work (Tr. at 22). In assessing Claimant's RFC, the ALJ stated as follows:

> The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.
>
> In activities of daily living, the claimant has no restriction. The claimant reported being able to do dishes (Part F, page 68). The claimant completed a Function Report and reported being able to prepare his own meals and do laundry (Part E, pages 33-34). At the hearing, the claimant testified to doing laundry and running the vacuum.
>
> In social functioning, the claimant has moderate difficulties. The claimant reported going to karaoke with his cousin (Part F, page 528). The claimant reported going to the grocery store and going to get medications (Part E, page 34).
>
> With regard to concentration, persistence or pace, the claimant has moderate difficulties. He reported watching television and being able to pay bills, count change, and handle a savings account (Part E, pages 30-37).
>
> As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration.
>
> Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.
> (Tr. at 16-17).

At the fifth and final step, the ALJ concluded that Claimant has a residual functional capacity to perform less than the full range of light work, reduced by nonexertional limitations[1] (Tr. at 17-18).    The ALJ concluded that Claimant was not disabled.

### Claimant's Challenges to the Commissioner's Decision

Claimant asserts that new evidence from Amelia McPeak, DO, Psychiatrist, which was previously submitted to the Appeals Council, warrants reversing or remanding the ALJ's decision (ECF Nos. 10, 14).  Claimant asserts that the ALJ should consider Dr. McPeak's letter clarifying her treatment notes and for further consideration of Dr. McPeak's medical opinion about Claimant's limitations (ECF No. 14).  Claimant asserts that the ALJ committed reversible error in failing to re-contact Claimant's treating medical provider pursuant to 20 C.F.R. § 404.1512(e).  Additionally, Claimant asserts that the evidence of record documents that Claimant is disabled and unable to perform the basic mental demands of unskilled work as described in SSR 85-15, warranting an award of benefits.

The Commission asserts that the March 1, 2012, letter from Dr. McPeak is not new and material evidence and does not warrant a remand in this case (ECF No. 13).  The Commission asserts that the standard of judicial review in social security cases is extremely narrow.  The Commission asserts that the ALJ reasonably found plaintiff's allegations of disabling limitations to be less than fully credible and properly gave the opinion of Maureen Hayes, M.Ed., no weight.[2]  The Commission asserts that the ALJ reasonably gave little significant weight to Dr. McPeak's opinion and had no obligation or duty to re-contact Dr. McPeak.

---

[1]  The limitations included only occasionally perform climbing, kneeling, crouching and crawling.  He was limited to work involving routine, repetitive tasks with only occasional interaction with co-workers and supervisors, no public contact and no production pace (which refers to low stress, no fixed production quotas, no hazardous conditions, little decision making and few changes in the work environment.)

[2]  The ALJ held that Dr. Hayes treated Claimant weekly to assist him with attention and organization skills addressing his attention deficits (Tr. at 21).  Dr. Hayes reported that Claimant was handicapped by depression and attention deficits which had been the cause of past employment failures.  Dr. Hayes opined that Claimant was disabled.

**Additional Evidence**

In March of 2012, shortly after the ALJ's order, Claimant submitted a letter from Dr. McPeak addressing the intended context of the word "stable" in her assessment of Claimant (Tr. at 7). Dr. McPeak's letter states:

> I am writing in response to a decision received by Zachery Russell dated January 19, 2012 which denied his application for Social Security Disability. I wanted to speak directly to the findings of fact wherein the word "stable" was taken out of context. Stable disease, by medical definition, is a state in which treatment has been given and clinical signs of the disease do not increase or decrease in extent or severity. Referring to Mr. Russell as psychiatrically stable was not to say that he is asymptomatic or that his condition is not disabling. In the frame of reference I intended, "stable" was to say that Mr. Russell's symptoms were continual, constant. I did not determine that Mr. Russell is well or able to sustain work.

After issuance of the ALJ decision on January 19, 2012, Claimant sought review by the Appeals Council. With his request for review, Claimant submitted new evidence not before the ALJ. The new evidence included the letter from his treating psychiatrist, Dr. McPeak, dated March 1, 2012. Dr. McPeak's letter clarified her intended context for the word "stable" in an office assessment about Claimant.

Dr. McPeak's office assessment note on September 22, 2011, stated "Patient seen today, and he appears to continue to be psychiatrically stable right now on his current medications" (Tr. at 238). On December 1, 2011, Dr. McPeak completed an assessment form and opined that Claimant was extremely limited in the ability to deal with work stresses; understand, remember and carry out complex job instructions; behave in an emotionally stable manner; complete a normal workday and workweek without interruptions from psychologically based symptoms; and to perform at a consistent pace without any unreasonable number and length of rest periods. Dr. McPeak further rated Claimant as having marked limitation in functioning. *See* Tr. at 21.

The ALJ gave Dr. McPeak's opinion little significant weight because her assessment of Claimant's limitations was viewed by the ALJ as inconsistent with her own treatment notes.  The ALJ points to Dr. McPeak's above mentioned treatment note which the ALJ viewed to "indicate that the claimant was psychiatrically stable on his medications" (Tr. at 21).  The ALJ went on to state that "While [Dr. McPeak] is his treating mental health source and entitled to have her opinion considered, when that opinion is unsupported by her own treatment record, the opinion is greatly diminished in persuasiveness."  (*Id*.)

**Remand / 42 U.S.C. § 405(g).**

In considering Claimant's assertion that the new evidence from Dr. McPeak warrants changing the ALJ's decision, the Social Security regulations allow two types of remand.  Under the fourth sentence of 42 U.S.C. § 405(g), the Court has the general power to affirm, modify or reverse the decision of the Commissioner, with or without remanding the cause for rehearing for further development of evidence.  42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 97 (1991).  Where there is new medical evidence, the court may remand under the sixth sentence of 42 U.S.C. § 405(g) based upon a finding that the new evidence is material and that good cause exists for the failure to previously offer the evidence.  42 U.S.C. § 405(g); *Melkonyan*, 501 U.S. at 97.

**New and Material**

On April 8, 2013, the Appeals Council denied Claimant's request for review.  In doing so, the Appeals Council noted that it made Dr. McPeak's letter a part of the record.  But in the Notice of Appeals Council Action, the Appeals Council "found that this information does not provide a basis for changing the ALJ's decision" (Tr. at 3) and so "the ALJ's decision is the final decision of the Commissioner of Social Security in [Claimant's] case" (Tr. at 2).

The Appeals Council informed Claimant that because it denied review, the decision of the ALJ became "the final decision of the [Commissioner]." *Wilkins v. Sec'y Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (en banc); *see also Sims v. Apfel*, 530 U.S. 103, 106-107, 120 S. Ct. 2080, 147 L.Ed. 2d 80 (2000). The factual findings underpinning the Commissioner's final decision are upheld "if they are supported by substantial evidence and were reached through application of the correct legal standard." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); see 42 U.S.C. § 405(g). In making this determination, the Court will "review the record as a whole" including any new evidence that the Appeals Council "specifically incorporated… into the administrative record." *Wilkins*, 953 F.2d at 96.

In *Wilkins,* the Appeals Council incorporated into the administrative record a letter submitted with the request for review in which Wilkins' treating physician offered his opinion concerning the onset date of her depression. *Id* at 96. The *Wilkins* Court decided it was required to consider the physician's letter in determining whether substantial evidence supported the ALJ's findings. *Id.* The Fourth Circuit stated:

> "Reviewing courts are restricted to the administrative record in performing their limited function of determining whether the Secretary's decision is supported by substantial evidence." *Huckabee v. Richardson*, 468 F.2d 1380, 1381 (4th Cir. 1972); *see* 42 U.S.C.A. § 405(g). The Appeals Council specifically incorporated Dr. Liu's letter of June 16, 1988 into the administrative record. Thus, we must review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the Secretary's findings.

> *Id.*

As the Fourth Circuit has pointed out, the regulations specifically permit claimants to submit additional evidence, not before the ALJ, when requesting review by the Appeals Council. *See* 20 C.F.R. §§ 404.968, 404.970(b); *Maurice E. Meyer, III, v. Michael J. Astrue*, 662 F.3d 700; U.S. App. LEXIS 23955 (December 2, 2011). In such cases, the Appeals Council first determines if the submission constitutes "new and material" evidence that "relates to the period

on or before the date of the [ALJ's] hearing decision." *Id.* § 404.970(b).  Evidence is new "if it

is not duplicative or cumulative" and is material if there is "a reasonable possibility that the new

evidence would have changed the outcome." *Wilkins*, 953 F.2d at 96.  In *Meyers*, the Court

concluded that a treating physician's opinion letter submitted after the ALJ's decision,

constituted new and material evidence. *See* 20 C.F.R. § 404.1527(d)(2) (providing that a treating

physician's opinion is entitled to deference.)

    As quoted above, under *Wilkins*, the Court must review the record as a whole, including

the new evidence submitted to the Appeals Council, in order to determine whether the ALJ's

decision is supported by substantial evidence.  In order to justify a remand to consider newly

submitted medical evidence, the evidence must meet the requirements of 42 U.S.C. § 405(g) and

*Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985).[3]

    In *Borders*, the Fourth Circuit held that newly discovered evidence may warrant a remand

to the Commissioner if four prerequisites are met:   (1) the evidence is relevant to the

determination of disability at the time the application was first filed and not simply cumulative;

(2) the evidence is material to the extent that the Commissioner's decision "might reasonably

have been different" had the new evidence been before him; (3) there is good cause for the

---

[3] Within relevant case law, there is some disagreement as to whether 42 U.S.C. § 405(g) or the opinion in
*Borders* provides the proper test in this circuit for remand of cases involving new evidence.  This court will apply
the standard set forth in *Borders* in accordance with the reasoning previously expressed in this district:

> The court in *Wilkins v. Secretary of Dep't of Health & Human Servs.*, 925 F.2d
> 769 (4th Cir. 1991), suggested that the more stringent *Borders* four-part inquiry
> is superseded by the standard in 42 U.S.C. 405(g).  The standard in § 405(g)
> allows for remand where "there is new evidence which is material and . . . there
> is good cause for the failure to incorporate such evidence into the record in a
> prior proceeding."   However, *Borders* has not been expressly overruled.
> Further, the Supreme Court of the United States has not suggested that *Borders'*
> construction of §  405(g) is incorrect.  Given the uncertainty as to the contours
> of the applicable test, the Court will apply the more stringent *Borders* inquiry.

*Brock v. Secretary, Health and Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992) (citations omitted).

claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant has presented to the remanding court "at least a general showing of the nature" of the newly discovered evidence." *Id.*

Dr. McPeak saw Claimant for routine medication management on September 22, 2011 (Tr. at 238-239), approximately 3 ½ months prior to the ALJ's decision on January 19, 2012. Dr. McPeak demonstrated that Claimant had maintained reduction in symptoms of depression with no active suicidal thought (Tr. at 238). Dr. McPeak noted that Claimant would continue with "weekly therapy." Dr. McPeak's mental status examination of Claimant during that office visit demonstrated that Claimant's appearance was a "casually dressed, obese male whose attitude is cooperative." His behavior and speech were normal. His mood was mildly dysphoric and anxious. His affect was constricted. His thought process was linear and goal directed. His association, attention and concentration were intact. His though content did not contain suicidal or homicidal ideations. His perceptions did not contain auditory or visual hallucinations. His insight and judgment were fair. Dr. McPeak's assessment and plan stated that Claimant appeared to be psychiatrically stable right now on his current medications. Dr. McPeak did not change any of Claimant's current medications. Claimant was directed to return in about three (3) weeks due to recent suicidal thoughts.

## Reasonable Possibility the New Evidence Would Have Changed the Outcome

Claimant satisfied the four requirements of *Borders* with respect to the new evidence from Dr. McPeak. First, the evidence from Dr. McPeak is relevant to the determination of disability at the time the application was first filed and not simply cumulative. The ALJ explicitly relied on her impression of the meaning of psychiatrically stable to find that Dr. McPeak's assessment of Claimant's limitations were inconsistent with Dr. McPeak's treatment

record. Second, the decision "might reasonably have been different" if the ALJ compared Dr. McPeak's intended context of psychiatrically stable in her treatment records to her assessment of Claimant's limitations.  Third, a letter to clarify the context of treatment notes was not necessary at the time of the hearing; therefore, Claimant has demonstrated good cause for not introducing the letter when the claim was before the ALJ.  Finally, Claimant has provided the nature of the new evidence by submitting it to the Appeals Council.

Review of the record as a whole cannot determine if substantial evidence supports the denial of benefits.  As such, the undersigned respectfully RECOMMENDS that the District Court REMAND this matter pursuant to the sixth sentence, 42 U.S.C. § 405(g), for the purpose of considering the new evidence from Dr. McPeak not previously before the ALJ.  The new evidence submitted to the Appeals Council should be considered by the ALJ on remand.  The Court is not suggesting that the Appeals Council did not consider the evidence.  However, the nature of this evidence is worth considering in this case.  Because the undersigned has recommended remand on the basis of new evidence, Claimant's other challenges to the Commissioner's decision do not need to be addressed at this time.

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the District Court GRANT the Plaintiff's Brief in Support of Judgment on the Pleadings to the extent Plaintiff seeks remand for the purpose of considering new evidence and otherwise DENY Plaintiff's Brief, DENY the Defendants' Brief in Support of the Defendant's Decision, REVERSE the final decision of the Commissioner and REMAND this case for further proceedings pursuant to the sixth sentence of 42 U.S.C. § 405(g).

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable Judge Thomas E. Johnston.  Pursuant to

14

the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause show.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, v. 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Johnston and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Enter: July 30, 2014

Dwane L. Tinsley
United States Magistrate Judge

15